James Russell WIGGINS, Jr. and Leslie R. Cotes, III, Plaintiffs,

v.

William HITCHENS, Robert Pettinelli & A. Bruce Williams, Defendants.

Civ. A. No. 91–2179(RCL).

United States District Court, District of Columbia.

May 13, 1994.

See also 853 F.Supp. 484.

John C. LaPrade, Washington, DC and Frazier Walton, Jr., Alexandria, VA, for plaintiffs.

Jonathan Schiller, Kaye, Scholer, Fierman, Hays & Handler, Washington, DC and John Grad and William Dean, Grad, Logan & Klewans, Alexandria, VA, for defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

■ This matter comes before the court on defendants Pettinelli and Hitchens' joint motion to dismiss the complaint[1] and defendant Williams' motion to dismiss the complaint, or in the alternative, for summary judgment.[2] Upon consideration of the filings

---

1. Plaintiffs' factual allegations must be presumed true and liberally construed in favor of the plaintiff when reviewing the adequacy of a complaint for purposes of a Rule 12(b)(6) motion. *Phillips v. Bureau of Prisons*, 591 F.2d 966, 968 (D.C.Cir. 1979) (citing *Miree v. DeKalb County, Georgia*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492–93 n. 2, 53 L.Ed.2d 557 (1977)). In addition, the plaintiff must be given every favorable inference that may be drawn from his allegations of fact. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." 2A *Moore's Federal Practice*, § 12.07, at 63 (2d ed. 1986) (footnote omitted); *see Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir.1987) (citing *Pauling v. McElroy*, 278 F.2d 252, 254 (D.C.Cir.), *cert. denied*, 364 U.S. 835, 81 S.Ct. 61, 5 L.Ed.2d 60 (1960)). Dismissal is only appropriate if it appears beyond doubt that no set of facts proffered in support of plaintiff's claim would entitle him to relief. *Haynesworth*, 820 F.2d at 1254 (citations omitted); *Phillips*, 591 F.2d at 968.

2. A district court may grant summary judgment if it is clear that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

of counsel and the relevant law, defendants Hitchens and Pettinelli's motion to dismiss will be granted in part and denied in part in accordance with this memorandum opinion. Defendant Williams' motion to dismiss, or alternatively, for summary judgment will be granted.

## I. Introduction

Plaintiffs bring this lawsuit against three managers of District Cablevision and Philip Morris, Inc., for alleged violations of the plaintiffs' civil rights, 42 U.S.C. §§ 1981, 1983, and 1985, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and numerous other federal and state causes of action. In addition, both plaintiffs, African–American men, claim to be the objects of elaborate conspiracies to suspend or discharge their employment. Compl. ¶¶ 7, 10, 12–13, 16–18.[3]

## II. Fair Credit Reporting Act

■ Plaintiff Wiggins asserts that he was terminated from employment with District Cablevision and Philip Morris, Inc. because of the dissemination and use of an erroneous consumer report from Equifax Services, Inc. indicating that Mr. Wiggins had been convicted for felony possession of cocaine in the District of Columbia in 1989. *Id.* ¶ 12.[4] Plaintiff Wiggins now seeks to hold defendants Hitchens and Pettinelli responsible for his termination.

■ The FCRA imposes different obligations upon *consumer reporting agencies* that provide consumer credit information and *users* of consumer reports. *Compare* 15 U.S.C. §§ 1681(b), 1681c–1681e *with id.*

§ 1681m. It is clear that defendants are not "consumer reporting agencies" as defined by the Act, *id.* § 1681a(f); however, defendants may qualify as "users" of the Equifax report. In *Austin v. Bank America Serv. Corp.,* 419 F.Supp. 730, 733–34 (N.D.Ga.1974), the court found that employees of a bank carrying out their responsibilities within the scope of their employment were not "users" of consumer reports under the FCRA. The bank, not the employees of the bank, was found to be a "user" under the Act. Thus, defendants Hitchens and Pettinelli could only be considered "users" under the Act if they were acting outside the scope of their employment. *See Yohay v. City of Alexandria Employees Credit Union,* 827 F.2d 967, 973 (4th Cir. 1987); *Austin,* 419 F.Supp. at 734. Plaintiff alleges facts that could support such a finding.

Notwithstanding this classification, defendants Hitchens and Pettinelli have not violated any of the user provisions of the FCRA. Plaintiffs' complaint fails to allege any facts constituting the elements of a violation of the user provisions under the Act.

Although the complaint mentions violations of section 1681k and 1681e(b) of the Act, those sections of the statute would hold "a consumer reporting agency" responsible for any inaccuracies or errors in a consumer report. *See* Compl. ¶ 18(c). Equifax, the consumer reporting agency, would be liable for any inaccuracies if it were determined that Equifax had failed to follow reasonable procedures to assure maximum possible accuracy of the information. 15 U.S.C. § 1681e(b). Equifax, the consumer reporting agency, is required to provide the con-

R.Civ.P. 56(c). Summary judgment is appropriate only if "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Washington Post Co. v. U.S. Dep't of Health & Human Servs.,* 865 F.2d 320, 325 (D.C.Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). For purposes of evaluating a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party. *Id.* (citations omitted).

**3.** The defendants in this case are as follows: defendant William Hitchens, Mr. Wiggins' direct supervisor at Philip Morris, Compl. ¶¶ 4–5; Robert Pettinelli, the manager to whom Mr. Hitchens

reported at Philip Morris, *id.* ¶ 6; and A. Bruce Williams, a former manager at District Cablevision, *id.* ¶ 7.

**4.** This case is related to a number of other cases now before this court: *Wiggins v. Equifax Services, Inc.,* C.A. No. 90–0199, *Wiggins v. District Cablevision,* C.A. No. 92–0075, *Wiggins v. Equifax, Inc., et al.,* C.A. No. 92–0315, and *Wiggins v. Philip Morris, Inc.,* C.A. No. 92–0493. For extensive factual background information relating to the dissemination of the erroneous consumer report, see *Wiggins v. Equifax Services, Inc.,* 848 F.Supp. 213 (D.D.C.1993).

sumer notice or to maintain strict procedures to insure the report was up to date if the report was a matter of public record and likely to have an adverse effect upon the consumer's ability to obtain employment under section 1681k.

To the extent that Mr. Wiggins has attempted to allege violations of any sections of the FCRA, his claim is insufficiently pled as a matter of law, and the FCRA claims against all defendants are dismissed with prejudice.[5]

### III. Section 1981

■ Plaintiffs claim that they were harassed because of their race during the course of their employment and that this racial animus caused them to be fired. None of these claims are cognizable under 42 U.S.C. § 1981. *See* Compl. ¶ 16(c); 19.

■ Plaintiffs' allegations were not viable under section 1981 prior to the enactment of the Civil Rights Act of 1991. As the Supreme Court stated in *Patterson v. McLean Credit Union,* section 1981 "does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." *Patterson v. McLean Credit Union,* 491 U.S. 164, 171, 109 S.Ct. 2363, 2369, 105 L.Ed.2d 132 (1989).

■ Section 1981 does not protect an employee against discriminatory treatment during the course of his employment, including the imposition of discriminatory working conditions. *See Patterson,* 491 U.S. at 177, 109 S.Ct. at 2373; *Gersman v. Group Health Ass'n,* 931 F.2d 1565, 1570–72 (D.C.Cir.1991), *vacated and remanded* — U.S. ——, 112 S.Ct. 960, 117 L.Ed.2d 127 (1992). Furthermore, section 1981 does not apply to breach-of-contract or contract-termination claims. *See Gersman,* 931 F.2d at 1571. Plaintiffs' racial harassment and discriminatory dis-

charge claims under section 1981 are dismissed.

■ To the extent that plaintiffs argue that the Civil Rights Act of 1991 should apply retroactively to their case, the claim is denied. *Rivers v. Roadway Express, Inc.,* — U.S. ——, ——–——, 114 S.Ct. 1510, 1516, 128 L.Ed.2d 274, 1994 U.S.Dist. LEXIS 3294, * 5–6 (April 26, 1994); *Gersman v. Group Health Ass'n,* 975 F.2d 886, 889–900 (D.C.Cir.1992) (adopting the decision in *Gersman v. Group Health Ass'n,* 931 F.2d 1565 (D.C.Cir.1991), *vacated and remanded* — U.S. ——, 112 S.Ct. 960, 117 L.Ed.2d 127 (1992)), *cert. denied* — U.S. ——, 114 S.Ct. 1642, 128 L.Ed.2d 363 (1994); *Van Meter v. Barr,* 778 F.Supp. 83 (D.D.C.1991); *Allen v. McEntee,* 1993 WL 121513, 1993 U.S.Dist. LEXIS 4122 (D.D.C. Apr. 2, 1993) (Lamberth, J.).

### IV. Section 1983

■ In paragraph 16(c) of the complaint, plaintiff Wiggins suggests that defendants violated the provisions of 42 U.S.C. § 1983 by "circulating, and discussing, and aiding and assisting Equifax, Inc. and Equifax Services, Inc. [in] distribut[ing]" an erroneous Equifax consumer report relating to Mr. Wiggins. However, section 1983 requires that the action taken to deprive plaintiff of equal protection of the laws involve some state action. No state action is alleged in this case. Plaintiff Wiggins' 1983 claim is without merit.[6]

### V. Civil Rights Conspiracy

■ In order to plead a viable cause of action under 42 U.S.C. § 1985(3), a plaintiff must allege (1) an act in furtherance of (2) a conspiracy (3) to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. *Great American Fed. Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979); *see Wiggins v. Philip Morris, Inc.,*

---

**5.** Mr. Coates has failed to plead any facts that would suggest any violation of the Fair Credit Reporting Act. To the extent that Mr. Coates' claims are for violations of the Act, the claims are dismissed.

**6.** Again, Mr. Coates has failed to plead any facts that would suggest any nexus to any consumer report or any state action in connection therewith. To the extent that Mr. Coates' claims are for violations of § 1983, the claims are dismissed.

853 F.Supp. 470 (D.D.C.1994) (denying and granting in part defendant Philip Morris, Inc.'s motion to dismiss). "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Novotny*, 442 U.S. at 372, 99 S.Ct. at 2349. Therefore, this court must determine whether violations of the federal laws asserted in this case equate to a deprivation of " 'the equal protection of the laws, or of equal privileges and immunities under the laws' within the meaning of § 1985(3)." *Id.* There can be no recovery under section 1985(3) absent a violation of a substantive federal right.

Mr. Wiggins alleges that he had "racially motivated problems" with defendants Hitchens and Pettinelli during his employment with Philip Morris from 1988 to 1990. These problems prompted these managers, along with Philip Morris, to fire plaintiff on the basis of concerted efforts with Equifax, Inc., and District Cablevision. Compl. ¶¶ 8, 15.[7] On the other hand, Mr. Coates only pleads that defendants Hitchens and Pettinelli, along with another Philip Morris employee, engaged in "conspiratorial acts" to violate his civil rights. *Id.* ¶¶ 16–19.

 The Fair Credit Reporting Act cannot be used as the underlying federal cause of action for a section 1985(3) claim. *See Wiggins v. Philip Morris, Inc.*, 853 F.Supp. 470, § VI(E)(3) (D.D.C.1994) (granting and denying in part defendant Philip Morris, Inc.'s motion to dismiss). Plaintiff Wiggins' claim in this respect is dismissed. Mr. Coates' conspiracy theory has nothing to do with the use of an Equifax report.[8]

 To the extent that plaintiffs maintain that 42 U.S.C. § 1981 should be used as a basis for a cause of action under section 1985(3), plaintiffs' claims are dismissed. Compl. ¶ 16(c). Federal statutory rights such as those protected under section 1981

may provide a substantive basis for a section 1985(3) claim; *see Alder v. Columbia Historical Soc.*, 690 F.Supp. 9, 15 (D.D.C.1988) (Bryant, J.); *Thompson v. International Assoc. of Machinists and Aerospace Workers*, 580 F.Supp. 662, 668 (D.D.C.1984) (Green, Joyce Hens, J.); however, plaintiffs fail to allege a violation of section 1981 by any of the defendants. *See supra* § III. Plaintiffs also fail to allege the requisite elements of a conspiracy to violate section 1981.

Likewise, plaintiffs fail to allege a violation of section 1983 or the requisite elements of a conspiracy to violate section 1983.

Plaintiffs fail to allege any violation of federal law that can be used as an underlying, substantive offense for purposes of 42 U.S.C. § 1985(3). Plaintiffs' federal conspiracy claims are dismissed for failure to successfully plead an underlying, federally protected right required under section 1985(3).

## VI. Other Claims

Plaintiffs also make allegations of wire fraud, defamation, tortious interference with contract, and civil conspiracy.

### A. *Wire Fraud*

 Federal wire fraud is a criminal offense that has no corresponding private right of action. *See, e.g., Official Publications, Inc. v. Kable News Co.*, 884 F.2d 664, 667 (2d Cir.1989); *Napper v. Anderson*, 500 F.2d 634, 636 (5th Cir.1974), *cert. denied* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975). Defendants' motion to dismiss with respect to this claim is granted. *See* Compl. ¶ 17.

### B. *Defamation*

 All averments of defamation must be pled with particularity. *See Hoffman v. Hill and Knowlton, Inc.*, 777 F.Supp. 1003, 1005 (D.D.C.1991) (quoting *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 699 (8th Cir.1979)); 5 Charles A. Wright & Arthur R.

---

7. In particular, Mr. Wiggins contends that defendants agreed "to assign and to give poor performance ratings to both plaintiffs, to stigmatize, then, discredit them and lead to their termination and financial ruin of each plaintiff." *Id.* ¶ 10.

8. Plaintiff Coates does not and cannot claim violations of the Fair Credit Reporting Act.

Miller, *Federal Practice and Procedure* § 1309 (1990) ("In libel and slander suits, the time and place of the publication should be specifically stated in the complaint."). Conclusory allegations are insufficient to state a claim. *See Hoffman,* 777 F.Supp. at 1005; *Ridgewells Caterers v. Nelson,* 688 F.Supp. 760, 763 (D.D.C.1988). A plaintiff should plead the time, place, content, speaker, and listener of the alleged defamatory matter. *Id.; see also Wiggins v. Equifax, Inc.,* 848 F.Supp. 213 (D.D.C.1993).

The content of the alleged defamatory matter contained in the consumer credit report is not in dispute. The report stated that Mr. Wiggins had a felony cocaine conviction. This accusation of conviction of a crime is libelous *per se.* However, the allegations with respect to the other elements *that must be pled with specificity* are woefully deficient.[9]

Allegations of defamation pertaining to the employment performance reports likewise fail; plaintiffs make no adequate showing of the content of the defamatory statements placed in his personnel file.

## C. *Tortious Interference with Contract*

■■■■ "Tortious interference with contractual relations arises when a defendant interferes with a contract between the plaintiff and some third party." *Weaver v. Gross,* 605 F.Supp. 210, 216 (D.D.C.1985) (citing *Donohoe v. Watt,* 546 F.Supp. 753, 757 (D.D.C. 1982), *aff'd* 713 F.2d 864 (D.C.Cir.1983)). In order to recover for intentional interference with contractual relations, the plaintiff must prove four elements: "(1) existence of a contract, (2) knowledge of the contract, (3) intentional procurement of its breach by the defendant, and (4) damages resulting from the breach." *Sorrells v. Garfinckel's, Brooks Brothers, Miller & Rhoads, Inc.,* 565 A.2d 285, 289 (D.C.1989) (quoting *Alfred A. Alti-*

*mont, Inc. v. Chatelain, Samperton & Nolan,* 374 A.2d 284, 288 (D.C.1977)); *see Connors, Fiscina, Swartz & Zimmerly v. Rees,* 599 A.2d 47, 51 n. 6 (D.C.1991). Once these elements are shown, plaintiff may recover for intentional interference with contract "unless the defendant proves that his or her conduct was justified or privileged." *Sorrells,* 565 A.2d at 290.

"[T]he law affords ... a supervisor such as [defendants Hitchens and Pettinelli] a qualified privilege to act properly and justifiably toward a fellow employee and that employee's true employers...." *Sorrells,* 565 A.2d at 291. "[T]his privilege is vitiated when the supervisor acts with *malice* for the purpose of causing another employee's contract to be terminated." *Id.* (emphasis added).[10]

■■■ Plaintiffs' bare allegations seem to suggest that defendants Hitchens and Pettinelli could have been maliciously motivated by racial animosity to procure the termination of Mr. Wiggins' and Mr. Coates' contracts with Philip Morris and District Cablevision. *See* Compl. ¶¶ 16(1)–(2); 18. Defendants' motion to dismiss as to plaintiffs' claim for tortious interference with contract is denied.

## D. *Civil Conspiracy*

Both plaintiffs claim to be the objects of elaborate conspiracies to suspend or discharge their employment; however, the facts proffered by the two plaintiffs in support of their claims of wrongful termination vary. Mr. Wiggins asserts that defendants conspired with Equifax, Inc. and Philip Morris in a conspiracy to tortiously interfere with plaintiff's employment contract, to violate the FCRA, and to defame Mr. Wiggins. *See* Compl. ¶¶ 12, 13, 15, 18(b). Plaintiff Coates merely asserts that defendants conspired to tortiously interfere with his employment contract and to defame him. Plaintiffs' allega-

---

**9.** Statements such as "[d]efendants ... intended to harm James R. Wiggins by the practice of invidious discriminatory animas, [sic] ... agree[d] ... that each plaintiff would be discredited, defamed and financially destroyed by defendant's systematically marking both plaintiffs' performance ratings down and transmitting the false results in a fraudulent manner ...," compl. ¶ 16(1), are conclusory at best. No accusations are much more specific than this allegation. These allegations do not pertain to Mr. Coates.

**10.** As the court stated in *Sorrells,* "[i]t serves no purpose to immunize supervisory employees for their tortious conduct when they are neither parties to the contract between other employees and their common employer...." *Id.*

tions as to defendants' acts in furtherance of the alleged conspiracies are numerous.

■ It is well established that "there is no recognized independent tort action for civil conspiracy in the District of Columbia," *Waldon v. Covington*, 415 A.2d 1070, 1074 n. 14 (D.C.1980); however, District of Columbia law "acknowledges the concept of civil conspiracy." *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C.Cir.1983). "Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather it is a means for establishing vicarious liability for the underlying tort." *Id.*

■ Under District of Columbia law, the elements of a claim for civil conspiracy are "an agreement to do an unlawful act or a lawful act in an unlawful manner; an overt act in furtherance of the agreement by someone participating in it; and injury caused by the act." *Okusami v. Psychiatric Institute of Washington, Inc.*, 959 F.2d 1062, 1066 (D.C.Cir.1992) (citing *Halberstam*, 705 F.2d at 487). Moreover, "[t]o establish liability, the plaintiff also must prove that an unlawful overt act produced an injury and damages." *Id.* An agreement may be inferred from the underlying facts. *Id.*

**1. Tortious Interference with Contract**

■ Plaintiffs allege that defendants conspired together to tortiously interfere with their rights in their employment. Compl. ¶¶ 10; 12; 13; 15. There is an underlying tort under D.C. law for tortiously interfering with an employment contract. *See supra* § III(A). Again, plaintiffs have alleged facts that support at least an inference of an agreement to participate in a scheme to tortiously interfere with plaintiffs' employment contract.

**2. Fair Credit Reporting Act**

■ Plaintiff Wiggins asserts that defendants, nonparty Equifax Services, Inc., and others deliberately and willfully conspired to violate the FCRA. Compl. ¶¶ 12–18.

Although plaintiff cites inapplicable sections of the Fair Credit Reporting Act, he does put defendants on notice of his contention that defendants agreed with District Cablevision, Philip Morris, and Equifax, Inc., to distribute a false consumer credit report regarding Mr. Wiggins in order to terminate Mr. Wiggins from his employment.

■ If evidence exists suggesting a conspiracy between a consumer reporting agency and a user of consumer information to violate one of the duties imposed under the Act, then either party can be held vicariously liable under a conspiracy theory of liability. Plaintiff has adequately alleged such a conspiracy in this case. *See Wiggins v. District Cablevision*, 853 F.Supp. 484, § V(A) (D.D.C. 1994).

Plaintiff also has alleged facts that support at least an inference of an agreement to participate in a scheme to deliberately not correct the inaccurate consumer report, causing injury to Mr. Wiggins. *Id.*

**3. Conspiracy to Defame Plaintiffs**

Plaintiff claims that "there was an agreement ... that each plaintiff would be ... defamed ... by defendants systematically marking both plaintiffs' performance ratings down and transmitting the false results in a fraudulent manner...." Compl. ¶ 16(1); *see id.* ¶¶ 16(2); 18(b); 18(c).

However, plaintiffs failed to plead allegations of defamation with sufficient specificity to satisfy the tortious act requirement of the conspiracy cause of action. *See supra* § VI(B).

**E. Section 1–2530 of the District of Columbia Code**

Plaintiffs' allegations of violations of section 1–2530 of the District of Columbia Code by defendants are without merit. *See* Compl. ¶ 16(c); D.C.Code Ann. § 1–2530 (1981); *Wiggins v. Philip Morris*, 853 F.Supp. 470, § VI(D) (D.D.C.1994) (granting and denying in part defendant Philip Morris, Inc.'s motion to dismiss).

**VII. Claims Against Defendant A. Bruce Williams**

The observant reader will have noticed by now that all of the analysis of the aforementioned causes of action has focused on defen-

dants Hitchens and Pettinelli. Why? In an August 1, 1990 letter, John LaPrade, counsel for plaintiffs, expressly and unambiguously covenanted not to sue defendant Williams. The letter to Mr. Burt Whitt[11] states, in pertinent part:

> In addition, Mr. Wiggins is willing to issue a covenant not to sue any of them and may release the three (3) of them as long as District Cablevision is not released. You may consider this letter a covenant not to sue personally, any of the three witnesses, including Ms. Cynthia Lee, Mr. Allen Rodgers and Mr. Bruce Williams.... The statements you made have had a chilling effect on these critical witnesses, and thereby could adversely influence their recall of the facts. Our reliance is based in part on the witnesses' truthfulness, and therefore, your misleading assertions to each of them, that has already raised unwarranted fears about being sued personally, is of great concern to us.

This letter was written in connection with LaPrade's efforts to obtain voluntary cooperation from District Cablevision employees as deponents in Mr. Wiggins' lawsuit against Equifax, Inc. In exchange for his cooperation, Mr. Williams was assured that he would not be exposed to personal liability. Thereafter, defendant Williams cooperated and was twice deposed by Mr. LaPrade.

■ A covenant not to sue is a contract under which one party promises never to sue the other party or third person to enforce a claim. The District of Columbia requires such contracts to be supported by consideration.

■ In this case, the voluntary cooperation of defendant Williams was the consideration that was given on the express condition that he would not be subjected to personal litigation. The contents of the letter make this clear. LaPrade was concerned over the "chilling effect" the deponents might feel otherwise due to their "unwarranted fears about being sued personally." After the promise not to sue was made and defendant Williams accommodated Mr. Wiggins, his "unwarranted fears" were realized.

Mr. LaPrade laid out the bargain: deponent cooperation for immunity from suit. This covenant not to sue is supported by valid consideration. Plaintiff Wiggins received more than the testimony provided from a deponent under oath; he received the cooperation and voluntary testimony of a deponent with a tongue liberated from the fear of reprise. Plaintiff must now honor his the agreement made by his counsel. All of plaintiff Wiggins' causes of action aimed at defendant A. Bruce Williams are dismissed.[12]

Plaintiff Coates fails to allege any cause of action against defendant Williams. Defendant Williams is dismissed as a party to this lawsuit.

## VIII. State–Law Claims

■ The only causes of action surviving defendant Hitchens and Pettinelli's joint motion to dismiss are tortious interference with contract, conspiracy to tortiously interfere with plaintiffs' employment, and Mr. Wiggins' conspiracy to violate the FCRA, all of which are state-law claims. No federal claims remain against defendants Hitchens or Pettinelli; the court *sua sponte* considers

---

**11.** Mr. Whitt is counsel involved in one of the many related Wiggins cases.

**12.** Despite plaintiffs' vigorous argument to the contrary, this contract meets the requirements of the District of Columbia Statute of Frauds. The D.C.Code § 28–3502 states:

> An action may not be brought ... upon an agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing, which need not state the consideration and signed by the party to be charged therewith or a person authorized by him.

D.C.Code Ann. § 28–3502 (1991). Mr. LaPrade's letter evidences the agreement and satisfies the statutory writing requirement. The letter is signed by the attorney and agent of Mr. Wiggins, the party to be charged.

Defendant Williams justifiably relied upon Mr. LaPrade's covenant not to sue. This offer was accepted by defendant Williams' affirmative actions of cooperation. Indeed, defendant Wiggins appeared without personal counsel at the depositions in reliance upon Mr. Wiggins' promise that there would be no exposure to a lawsuit against him in an individual capacity. Plaintiffs cannot now claim that the agreement is without binding legal effect.

whether it should entertain these state-law causes of action under supplemental jurisdiction. *See Wiggins v. Philip Morris,* C.A. No. 92–493, 853 F.Supp. 470, § IV (D.D.C.1994) (denying and granting in part defendant Nedimyer's motion to dismiss).

Plaintiffs' state conspiracy and tortious interference with contract claims arise from essentially the same conduct alleged in the federal claims and are "so related" to the other federal claims in the complaint that they "form part of the same case or controversy." Moreover, one of the state-law, conspiracy causes of action relies upon a federal law statute as the underlying tortious act, the Fair Credit Reporting Act. Therefore, this court retains jurisdiction over the state-law counts surviving defendant Hitchens and Pettinelli's joint motion to dismiss.

IX. Conclusion

Defendants Hitchens and Pettinelli's joint motion to dismiss will be granted in part and denied in part in accordance with this memorandum opinion. Plaintiff Wiggins' only cognizable claims are for tortious interference with contract, conspiracy to tortiously interfere with plaintiff's employment, and conspiracy to violate the FCRA; the remainder of plaintiff Wiggins' complaint against defendants Hitchens and Pettinelli is dismissed. Plaintiff Coates' only allegations surviving the defendants' motion to dismiss are the tortious interference with contract and conspiracy to tortiously interfere with plaintiff's employment claims. The remainder of plaintiff Coates' complaint against defendants Hitchens and Pettinelli is dismissed. Defendant Williams' motion to dismiss, or alternatively, for summary judgment is granted. Defendant Williams is dismissed as a party to this lawsuit.