Major Timothy M. WARD, Plaintiff,

v.

Louis CALDERA, Secretary of
the Army, Defendant.

No. CIV.A. 00–740 (RCL).

United States District Court,
District of Columbia.

March 19, 2001.

Christopher Alexander Sterbenz, Vienna, VA, for Plaintiff or Petitioner.

Peter B. Robbins, U.S. Department of Justice, Civil Division, Washington, DC, for Defendant or Respondent.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

Now before the Court is a motion by the defendant to dismiss the plaintiff's complaint. The plaintiff, a white male, alleges that he was several times denied a promotion by the defendant's affirmative action policies. He also alleges a violation of the Administrative Procedure Act. After a full consideration of the parties' pleadings, the applicable law, and for the following reasons, the Court GRANTS in part and DENIES in part the defendant's motion.

## BACKGROUND

Major Timothy Ward is a white male and member of the Army Acquisition Corps. For three consecutive years, 1997, 1998, and 1999, he sought a promotion to the rank of Lieutenant Colonel. In each case, he was passed over. He now comes before this Court alleging that his lack of promotion was due to (1) the Army's failure to obey 10 U.S.C. § 1731(b), a statute addressing Acquisition Corps personnel management, and (2) the Army's affirmative action policies.

## I. The Acquisition Corps and 10 U.S.C. § 1731(b)

The Army Acquisition Corps is a relatively new division of the Army and, as its name suggests, it is responsible for acquiring the multitude of supplies needed by the Army. The Corps was formed in 1990 in the wake of such embarrassing mistakes as the expenditure of $999 for a pair of pliers, $1,868 for a toilet seat, and $688,000 for a fax machine. *See* Remarks of Rep. Mavroules, 136 Cong. Rec. 23,795, 23,880 (Sept. 11, 1990). Finding that "many personnel assigned to key acquisition positions" were "seriously unprepared for their jobs," Congress sought to create a "highly qualified cadre" of specialists dedicated to procurement tasks. *Id.* This was accomplished by the passage of the Defense Acquisition Workforce Improvement Act of 1990. *See* 10 U.S.C. §§ 1701–1764 (the "Acquisition Act" or "Act").

The Acquisition Act not only created the Acquisition Corps, it imposed various duties on the Secretary of Defense to ensure that the Corps, being a new and nontraditional work assignment, would nonetheless attract and retain many of the military's top officers. To this end, the Act requires that each officer in the Corps rank at least as Major and have certain educational and experience qualifications. *See* 10 U.S.C. § 1732(b)(1)(B), 1732(b)(2)-(3). As well, the Act obliges the Secretary not only to select the "best qualified" officers of the applicant pool, but to select

officers qualified to the degree that they are

> expected, as a group, to be promoted at a rate not less than the rate for all line (or the equivalent) officers of the same armed force . . . in the same grade.

10 U.S.C. § 1731(b). Beyond these requirements, however, Congress left it to the discretion of the Secretary to establish the particular "criteria and procedures" for "membership in an Acquisition Corps." 10 U.S.C. § 1732(a); 10 U.S.C. § 1732(b)(4).

Major Ward argues that 10 U.S.C. § 1731(b), the provision referencing the promotion rates of Corps and non-Corps officers, obliges the Secretary of Defense to promote a minimum number of Corps officers each year. Based on this reading of the statute, Major Ward alleges that the Army's failure to meet the required quota in 1998 and 1999 proximately caused him to be passed over for a promotion in those years.

## II. The Army's Promotion Selection Boards

The Army promotes officers to the rank of lieutenant colonel through the use of a lieutenant colonel "selection board." *See* 10 U.S.C. § 611(a). Each year, this board reviews the experience and qualifications of several hundred officers seeking a promotion, including those serving in the Acquisition Corps. They select the top candidates from the applicant pool and recommend them to the Secretary of the Army and ultimately the President for promotion to the positions available. *See* 10 U.S.C. § 612(a), 618. Although the President and the Secretary of the Army have the ultimate control over promotion decisions, it is understood by all

involved that most, if not all, of the evaluative decisions are made by the selection board.

Although the exact parameters of its membership policy are somewhat unclear to the Court,[1] it is clear that the Army generally seeks to staff its 18–member lieutenant colonel selection boards with a diverse array of officers. According to John Miller, Chief of the Management Support Division in the United States Total Army Personnel Command, formal guidelines control the "minimum numbers of minorities and women that are to serve on various selection boards, if available." *See* Declaration of John Miller, June 9, 2000, ¶ 4. In Major Ward's case, the selection boards considering his application did indeed contain officers of different races and sexes. The board considering his 1997 application contained two women and four minorities; the 1998 board contained three women and five minorities; and the 1999 board contained two women and six minorities.

Ward alleges the policy of requiring "one or more females and one or more members of racial groups other than Caucasian [to be on the selection board]", and the *lack* of a policy requiring "one or more males and one or more members of the Caucasian racial group [to be on the selection board]" caused him to be passed over for a promotion in 1997, 1998, and 1999. Complaint for Ward, Apr. 6, 2000, at 2–3. This, he argues, violates his Fifth Amendment right to equal protection.

## III. The Army's Promotion Selection Process

The process used by the selection boards to choose candidates for promotion

---

1. Aside from the declaration of John Miller, the Court was only able to uncover two statements regarding selection board membership: "[w]henever possible, board composition will reflect a worldwide distribution" and "[i]f only one minority representative is serving on the selection board, that minority member normally will be black." Memorandum from Wallace C. Arnold, Sept. 27, 1994, at 2–7.

has changed several times in the past years. Indeed, the Army appears to have used as many as three different selection processes during the years that Major Ward challenges, 1997, 1998, and 1999. Despite individual differences, the policies all amount to a "revote" policy, which is what the plaintiff essentially takes issue with.

As its name suggests, the revote procedure occurs after the selection board has "completed a review of [the officers'] personnel files and initially ranked [them] in order of qualification for promotion." Brief for Defendant, Mar. 31, 2000, at 2 (quoting *Sirmans v. Caldera,* 27 F.Supp.2d 248, 249 (D.D.C.1998) (Lamberth, J.)). After this ranking, and in accordance with official instructions, the selection board reviews the results to determine whether promoting the leading candidates from the first ranking would "produce a selection rate for minorities and women that was comparable to the selection rate for all officers considered for promotion." Brief for Defendant, Mar. 31, 2000, at 2. If promotions made in accordance with the initial ranking would *not* produce comparable promotion rates, the board was then obliged to reexamine the records of all female and minority candidates who were qualified for promotion yet unable to receive one on account of their ranking. The reexamination was "to determine if any of the personnel files show[ed] evidence of discrimination against the individual officer." *Id.* If a majority of the selection board found "evidence of past discrimination, that officer was 'revoted' and assigned a new qualification ranking." *Id.* This new ranking might be higher or lower than the candidate's first ranking and might not result in the candidate being ranked high enough for a promotion. In any event, the ranking ascribed to the female or minority applicant was final after the revote took place.

\*   \*   \*   \*   \*   \*

In summary, Major Ward's claims of unlawful conduct on the part of the Army fall into three categories. First, he alleges that he was denied a promotion in 1998 and 1999 because the Army failed to comply with 10 U.S.C. § 1731(b), a statute addressing the personnel management of the Army Acquisition Corps. Second, he alleges that he was denied a promotion in 1997, 1998, and 1999 because, in each of those years, the Army had an official policy requiring selection boards to contain a minimum number of women and minorities. Third, Major Ward alleges that he was denied a promotion in 1997, 1998, and 1999 because, in each of those years, the Army had an official policy requiring selection boards to give preferential treatment to women and minorities.

## *ANALYSIS*

### I.  Jurisdiction

Because the plaintiff's well-pleaded complaint presents a federal question, this Court properly has jurisdiction under 28 U.S.C. § 1331.

### II.  Standard of Review

If a plaintiff has failed "to state a claim upon which relief can be granted," a court may grant a defendant's motion to dismiss. Fed.R.Civ.P. 12(b)(6); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114 (D.C.Cir.2000). In evaluating a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and give the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979);

*see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Wiggins v. Hitchens,* 853 F.Supp. 505, 508 n. 1 (D.D.C.1994) (citing 2A Moore's Federal Practice, § 12.07, at 63 (2d ed.1986) (footnote omitted); *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987)).

## III.  The Plaintiff's § 1731(b) Claim

The plaintiff argues that the defendant violated 10 U.S.C. § 1731(b) and the Administrative Procedure Act by not promoting the proper number of Majors to the rank of Lieutenant Colonel. More specifically, the plaintiff alleges that the "FY 1998 and FY 1999 lieutenant colonel promotion selection boards ... missed the Congressional [promotion] requirement by a total of approximately 41 officers." Complaint for Ward, Apr. 6, 2000, at 11. Thus, the Court will now consider whether there is a promotion requirement, and if so, whether the Army has violated it.

### A.  Standard of Review

■ Before reviewing the defendant's interpretation, the Court notes that its review will be according to the rule of deference promulgated in *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Chevron* requires a court to analyze agency action under a two-step analysis. "First, always, is the question of whether Congress has directly spoken to the issue. If the intent of Congress is clear, then that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 841, 104 S.Ct. 2778. If, however, the statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agen-

cy's [final action] is based on a permissible construction of the statute." *Id.* A construction is permissible if it is reasonable. The agency's construction, however, need not be the only or most reasonable interpretation, *see id.* at 843 n. 11, 104 S.Ct. 2778, it must merely be "rational and consistent with the statute." *NLRB v. United Food & Commercial Workers Union,* 484 U.S. 112, 123, 108 S.Ct. 413, 98 L.Ed.2d 429 (1987). *See also General Elec. Co. v. United States Envtl. Protection Agency,* 53 F.3d 1324, 1327 (D.C.Cir.1995).

### B.  The Meaning of § 1731(b) and the Plaintiff's Claim

■ Looking at the text of the statute, the Court first finds that the meaning is quite clear. Section 1731(b) reads in full:

(b) **Promotion rate for officers in acquisition corps.** The Secretary of Defense shall ensure that the qualifications of commissioned officers selected for an Acquisition Corps are such that those officers are expected, as a group, to be promoted at a rate not less than the rate for all line (or the equivalent) officers of the same armed force (both in the zone and below the zone) in the same grade.

10 U.S.C. § 1731(b) (emphasis in original). The focus of the provision is undeniably on the "qualifications" of officers chosen for the Acquisition Corps, not on the promotion rate of officers already serving in the Acquisition Corps. The statute does not *require* officers in the Acquisition Corps to be promoted at a specific rate, but merely requires them to have "qualifications ... such that [they] are expected, as a group, to be promoted at a [specific rate]." Congress' use of the word "expected," is overt, and further evidences the statute's focus on the officers qualifications, not their right to a future promotion. Thus, the Court finds that section 1731(b) is capable of only one reasonable interpre-

tation, and that, in accordance with that interpretation, the Army is constrained in its choice of officers for membership in the Acquisition Corps, but is not constrained in its decision to promote officers already serving in the Corps.[2]

Viewing the plaintiff's claim against the above reading of section 1731(b), the Court finds that the plaintiff's claim must be dismissed. The plaintiff is not asserting any claim with reference to his selection for membership in the Acquisition Corps; he is only claiming that, as a member of the Acquisition Corps, he was not promoted to the rank of lieutenant colonel. Because section 1731(b) only controls the Army's actions with respect to filling Acquisition Corps positions, the plaintiff's claim must be dismissed.

### IV. The Plaintiff's Claim Based on the Army's Equal Opportunity Policy

■ The plaintiff alleges that he was denied a promotion in 1997, 1998, and 1999 as a result of the Army's equal opportunity policy, otherwise known as the "review and revote" policy. This policy, he alleges, is unconstitutional. The Court finds that his complaint states a claim for which relief can be granted and therefore denies the defendant's motion to dismiss.

■ It is axiomatic in the era of notice pleading that a plaintiff need only provide "a short, plain statement of the claim" such that "the defendant [will have] fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, (D.C.Cir.2000) (quoting Fed. R.Civ.P. 8(a)); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, a complaint "need not

plead law or match facts to every element of a legal theory." *Krieger v. Fadely,* 211 F.3d 134, 136 (D.C.Cir.2000) (quoting *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998)); *see also Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.,* 148 F.3d 1080, 1086 (D.C.Cir.1998) ("[A] plaintiff need not allege all the facts necessary to prove its claim."); *Atchinson v. District of Columbia,* 73 F.3d 418, 421–22 (D.C.Cir. 1996) ("A complaint . . . need not allege all that a plaintiff must eventually prove."). As Judge Easterbrook put it in the employment discrimination context:

> Because racial discrimination in employment is 'a claim upon which relief can be granted,' . . . . 'I was turned down for a job because of my race' is all a complaint has to say to survive a motion to dismiss under Rule 12(b)(6).

*Sparrow,* 216 F.3d at 1114 (quoting *Bennett,* 153 F.3d at 518).

The Court finds that the plaintiff has met this minimal threshold. Racial and gender discrimination in promotion are, of course, claims "upon which relief can be granted," and the plaintiff's statement that the defendant's racial and gender preferences denied him a promotion thus squarely states a claim.

### V. The Plaintiff's Claim Based on Selection Board Membership

The plaintiff alleges that he was denied a promotion three consecutive times because the Army has a policy of requiring women and minorities to sit on selection boards. This policy, he alleges, violates the Constitution. The defendant argues that the plaintiff is either without standing to pursue this claim, or is without a consti-

---

**2.** The plaintiff asserts that the Army is estopped from making this argument because it has previously announced an official interpretation to the contrary. *See* Plaintiff's Prae-

cipe, Nov. 16, 2000, at 1–2. The Court rejects this assertion because it finds that section 1731(b) is only capable of one reasonable interpretation.

tutional right in the first place. The Court finds that he is without standing to facially challenge the composition of the selection board.

■ Before analyzing the merits of the standing issue, it is necessary to understand the exact nature of the plaintiff's case. At a minimum, it is clear that the plaintiff claims that the 1996, 1997, and 1998 selection boards discriminated against him. The plaintiff clearly has standing to bring this claim, and thus can be expected to rely on the racial composition of the selection boards in his case. Beyond this "as-applied" claim, however, the Court finds that the plaintiff is making a facial challenge to the Army's policy on selection board membership.[3] It is on this claim that the Court finds that the plaintiff is without standing. The plaintiff's as-applied claim may, of course, proceed despite the dismissal of his facial claim.

■ Article III standing rules ensure that parties will not "convert the judicial process into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (quoting *United States v. SCRAP*, 412 U.S. 669, 687, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)). To this end, one of the requirements for standing is that there be "a causal relationship between the [plaintiff's] injury and the challenged conduct." *Northeastern Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (citations and internal quotation marks omitted) (analyzing a plaintiff's standing in an equal protection challenge to an affirmative action program); *see also Simon v. Eastern Kent. Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). This should not suggest, however, that one need show that the defendant's conduct was the *proximate* cause of the alleged injury. *See Public Interest Research Group of N.J. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3d Cir. 1990) ("The 'fairly traceable' requirement of the Valley Forge test is not equivalent to a requirement of tort causation."); *Loggerhead Turtle v. County Council of Volusia County, Fla.*, 148 F.3d 1231, 1251 n. 23 (11th Cir.1998). Rather, a plaintiff need only show that there is a "substantial likelihood" that the defendant's conduct caused the plaintiff's injury. *Duke Power Co. v. Carolina Environmental Study*

3. According to his complaint, the plaintiff is challenging the defendant's "policies requiring that women and non-Caucasians, but not men and Caucasians, be seated as members of promotion selection boards." Complaint for Ward, Apr. 6, 2000, at ¶ 28. As relief for this alleged constitutional violation, the plaintiff is seeking, inter alia, an order "[d]eclaring that the Army's policy [regarding selection board membership] violated the Fifth Amendment to the United States Constitution." *Id.* at 12. Because the gravamen of the plaintiff's allegation is not about "the manner in which [the policy] had been administered in practice" but about the policy itself, the Court regards his challenge as a facial challenge. *Bowen v. Kendrick*, 487 U.S. 589, 601, 108 S.Ct. 2562,

101 L.Ed.2d 520 (1988). The correctness of this inference is supported by comparing the plaintiff's allegations on this issue with those on the review and revote issue. Unlike the board membership issue, the plaintiff does not challenge the official review and revote instructions, but rather challenges the actual "giving [of] special consideration … to non-Caucasians and women." Similarly, as relief for this conduct, he seeks an order declaring the equal opportunity instructions *and* the "*conduct* of the [selection] boards" unconstitutional. Thus, the plaintiff's challenge to selection board membership, when read in coordination with his other claims, is best read as facial.

*Group, Inc.,* 438 U.S. 59, 75 n. 20, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).

Thus, the Court is posed with the question of whether there is a substantial likelihood that the Army's selection board membership policy caused the plaintiff's non-promotion. The Court finds that there is not such a likelihood. To hold otherwise would be to hold that every time "one or more females and one or more members of racial groups other than Caucasian" are placed on a selection board, the collective promotion decisions of the selection board are unavoidably altered. Such a conclusion would necessarily include two presumptions. First, that *all* women and non-whites have an inherent and unavoidable disposition to favor their own race and gender. And second, that all promotion decisions by selection boards are controlled by the voting habits of a few women and non-whites.

The first presumption is not just patently false, it is diametrically opposed to Supreme Court jurisprudence which this Court is bound to follow.[4] The Supreme Court has consistently shunned such racial and gender stereotypes, and, in any event, has never held that a decisionmaker's race or sex, by itself, prevents her from making an objective decision. *See, e.g., Bush v. Vera,* 517 U.S. 952, 986, 116 S.Ct. 1941, 135 L.Ed.2d 248 (1996) ("Our Fourteenth Amendment jurisprudence evinces a commitment to eliminate unnecessary and excessive governmental use and reinforcement of racial stereotypes."); *Georgia v. McCollum,* 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) ("[T]he exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party"); *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) ("If our society is to continue to progress as a multiracial democracy, it must recognize that the automatic invocation of race stereotypes retards that progress and causes continued hurt and injury"); *Powers v. Ohio* 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) ("We may not accept as a defense to racial discrimination the very stereotype the law condemns"); *Holland v. Illinois,* 493 U.S. 474, 484, n. 2, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990) ("[A] prosecutor's 'assumption that a black juror may be presumed to be partial simply because he is black' ... violates the Equal Protection Clause"); *Batson v. Kentucky,* 476 U.S. 79, 85, 104, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) ("[T]he Equal Protection clause forbids ... the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.", "[T]he Equal Protection Clause prohibits a State from taking any action based on crude, inaccurate racial stereotypes.").

The second presumption behind the plaintiff's claim is completely devoid of logic. While it is reasonable to assume that women and non-whites, together with the other members of selection boards, inform the decisions of the board, it is patently unreasonable to assume that a few members, constituting a numerical minority of the board, can control the outcome of the board's decisions. Thus, even if women

---

**4.** Aside from Supreme Court jurisprudence, at least one court has considered the composition of a military selection board in an Equal Protection action. In evaluating whether the racial make-up of a particular selection board gave rise to an inference of discrimination, Judge Green recognized that "[t]here is a strong presumption that ... selection board members faithfully discharge[ ] their duties." *Emory v. Secretary of the Navy,* 708 F.Supp. 1335, 1343 (D.D.C.1989) (citing *Neal v. Secretary of the Navy,* 639 F.2d 1029, 1037 (3d Cir.1981) (relying on a strong presumption of good faith in the conduct of Navy promotion selection boards)).

and non-whites were possessed of the class narcissism which the plaintiff implies, there is no reason to think they would be successful in converting the rest of the board to their views.

Of course, there exists the *possibility* (though it is a slight one for sure) that a particular woman or minority, possessed of both class narcissism and Machiavellian powers of persuasion, could pull off a coup of racial or gender discrimination against a particular applicant. But the mere possibility of this is a far cry from the necessity that, in a facial challenge, the plaintiff "establish that no set of circumstances exists under which the [policy] would be valid." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *see also Ohio v. Akron Center for Reproductive Health,* 497 U.S. 502, 514, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990).

Nonetheless, as the preceding paragraph recognizes, just because the Court rejects the plaintiff's facial challenge does not mean that the selection board composition is irrelevant to the plaintiff's discrimination claim. Indeed, the plaintiff in this case might, in accordance with his duty to demonstrate a discriminatory purpose under *Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), utilize the selection board membership, together with other evidence such as the promotion rate for certain races and genders, to persuade the Court that he has been discriminated against. In short, if the plaintiff was victimized by the Machiavellian narcissist, he can still pursue that claim.

## CONCLUSION

In summary, the Court finds that (1) the Army did not violate 10 U.S.C. § 1731(b), (2) Major Ward has properly stated a claim of racial discrimination, and (3) Major Ward lacks standing to facially chal-

lenge the Army's policy on selection board membership. A separate order consistent with these holdings will issue this date.

## ORDER

Consistent with the Memorandum Opinion issued this date, it is hereby

ORDERED that the defendant's motion to dismiss [2–1] is GRANTED with respect to the plaintiff's facial challenge to the defendant's policy on selection board membership and the plaintiff's non-promotion claim based on 10 U.S.C. § 1731(b) and DENIED in all other respects; further, it is

ORDERED that the plaintiff's non-promotion claim based on 10 U.S.C. § 1731(b) is DISMISSED WITH PREJUDICE; further, it is

ORDERED that the plaintiff's facial challenge to the defendant's policy on selection board membership is DISMISSED WITH PREJUDICE; further, it is

ORDERED that the defendant's motion to extend time filed on January 9, 2001 [16–1] is GRANTED; further, it is

ORDERED that the defendant's motion for leave to file a response to plaintiff's praecipe [17–1] is GRANTED; further, it is

ORDERED that the defendant's motion to extend time filed on January 18, 2001 [18–1]; further, it is

ORDERED that the plaintiff's January 26, 2001 motion to commence discovery on certain issues and continue the consideration of the defendant's motion to dismiss [21–1,2] is DISMISSED WITHOUT PREJUDICE AS MOOT; further, it is

ORDERED that the defendant's motion to extend time filed on February 9, 2001 [22–1,2] is GRANTED; further, it is

ORDERED that the defendant's motion to extend time filed on February 16, 2001 [23–1,2] is GRANTED; further, it is

ORDERED that the plaintiff's motion to strike filed on March 1, 2001 [25–1] is DISMISSED WITHOUT PREJUDICE AS MOOT; further, it is

ORDERED that the plaintiff's motion to extend time filed on March 1, 2001 [26–1] is DENIED; further, it is

ORDERED that the parties shall, within 10 days of this date, confer pursuant to Local Civil Rule 16.3 and provide a report and proposed scheduling order to govern further proceedings.

SO ORDERED.